## HOFFMAN v PITTSBURGH & LAKE ERIE RAILROAD CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided 1932

John Ruffalo, Youngstown, for plaintiff in error.

Wilson, Hahn & Wilson, Youngstown, for defendant in error.

POLLOCK, J.

The plaintiff claims that there was error in the failure to give a request of the plaintiff before argument, number one:

"I say to you as a matter of law, that when a gateman or towerman and gates are maintained at a street railroad crossing, in a generally traveled public street in a town or city, it is his duty to observe the tracks and know when, on account of trains or engines there, it is dangerous for drivers of motor vehicles or automobiles to cross, and when it is so, to close the gates and keep them closed to prevent such drivers of motor vehicles or automobiles from going upon the tracks, and it is as much their duty to observe and know when the tracks are clear, and persons may cross over in safety, when it is, to open the gates and keep them open for that purpose, so long as it continues to be safe to cross, and no longer."

This request was refused by the court and it is urged that this was error. The request has been taken from the opinion in the case of **Railroad Company v Schneider, 45 Oh St 630**, and it is very closely adapted to a certain paragraph in the opinion in that case. We think the court might well have given the request, but if it was error not to give this request it comes under the rules of what is commonly known as the two issue rule. This was first announced in **Sites v Haverstick, 23 Oh St, 626**:

"Where the jury, by their verdict, find the issues joined in the cause in favor of one of the parties, this is to be taken as a verdict finding each and all of the issues therein for such party.

In such case if the issues are such that a finding of either of them in favor of the successful party, entitles him to the judgment rendered, the judgment will not be reversed for error in the instructions of the court relating exclusively to the other."

This request relates exclusively to the negligence of the defendant. In this case not only the negligence of the defendant but also the contributory negligence of the plaintiff was in issue; in fact, the negligence of the defendant is practically admitted in this case, in not lowering the gates, but it does not affect the contributory negligence of the plaintiff, and that was the real issue in this case, whether or not the plaintiff herself was not negligent in running into this car as it was backed over the crossing.

The next error complained of is the refusal of the court to give plaintiff's request number three before argument, which reads as follows:

"I say to you, as a matter of law, that it is much more important, where a traveler is driving a motor vehicle or automobile, and comes to a steam railroad crossing, where gates and a gateman or towerman are maintained, than when she is walking, because in the former case her attention is necessarily divided between the operation and control of the motor vehicle or automobile and the observation of the track, and her reliance upon the gates and the gateman or towerman, in the nature of things, must be greater than in the case of a pedestrian."

This statement is true so far as the facts are concerned, but it lays down no rule whatever that would guide the jury in determining the negligence of a party approaching a railroad track in an automobile. It is simply an argument in comparing the degree of care between a person driving an automobile and a person walking along the street. We think there was no error in the failure to give this charge.

The next complaint is that there was error in giving the fourth request of the defendant:

"The law charges you, as a matter of law, that the plaintiff was under duty to exercise ordinary care under the circumstances in looking and listening for approaching trains, and if you find that the plaintiff should have seen or heard the approaching train at a time when in the exercise of ordinary care she should have stopped her automobile before colliding with this train, then your verdict must be for the defendant."

This is a general legal proposition saying to the jury that she must exercise ordinary care under the circumstances. If we understand the reason why objection is made to the giving of this request, it is because in this case the railroad had provided gates and a gateman to lower the gates and that it does not include within its terms that proposition. It is true a person approaching a railroad crossing where there are established gates to be raised and lowered as a train is passing over, has a right to presume that the railroad company will do its duty in lowering the gates, but while they can rely upon that principle, yet it does not release the party approaching a railroad crossing from using ordinary care under those conditions. Now, all that was said to the jury was that it was her duty to exercise ordinary care under the circumstances, all the conditions that surrounded her at that time. The court might and no doubt would have given a charge, if requested, in regard to the rules of care, or rather the reliance that a person approaching might have upon a railroad doing its duty at a crossing where there are gates, but that was not requested and there was no error in giving this general charge.

The next error complained of is that the verdict is against the manifest weight of the evidence. As we have said, Second Street in Lowellville was a paved street. The improved part for vehicle travel was not very wide, possibly the street was thirty-five feet wide. It was comparatively level

as you approached the tracks, and as we have stated there were thirty-two feet between the south rail of the railroad tracks and a cobbler's shop or shoemaker's shop; that when you passed beyond the north end of that shop a train of cars could be seen to the east for some distance. The plaintiff says that she pulled around the automobile that was backing out of the alley way and started along this street slightly to the east of the center of the street, and she is asked on direct examination:

"Q. When did you notice the train coming? Where were you, about how far from the first track when you noticed the train coming,—about, you don't have to be exact?

A. About fifty feet, anyhow.

Q. How far was your car parked from the railroad tracks?

A. From the railroad tracks to where I was parked, about fifty or seventy-five feet."

Then she is afterwards asked:

"Q. And after you passed the shoemaker's shop is when you saw the train going?

A. I saw the train coming after I passed it.

Q. Do you know what the space is, if you don't don't attempt to say, but if you do, about how far it is from the shoemaker's shop, that open space here?

A. I didn't measure it but I imagine twenty-five feet."

We have stated it was proven by measurement that it was thirty two feet to the railroad track.

"Q. Where was the train that you saw with reference to the crossing?

A. Just about where the end of the gates would come.

Q. That is, it hadn't gotten upon the crossing yet, proper, when you first saw it?

A. I believe the front end was.

Q. How far over the crossing was it?

A. Well, the front, the part where the wheel goes, anyways.

Q. Just a little bit then?

A. Yes."

Then she is asked about the gates and she says that they were up, but does not testify that she was relying on the gates being lowered on the approach of a train on the crossing. Plaintiff denies that there was any bell or whistle sounded. She testifies further that the brakes on her car were good, and she testifies again to her car being fifty or seventy-five feet south of the tracks when she stopped at the drug store.

"Q. And you were coming up the middle of the street, going north?

A. I wasn't right in the middle.

Q. Were you practically in the middle or to the east of it or to the west of it, or how?

A. To the east a little."

Then she is asked:

"Q. And then right next to the driveway is a little shoemaker's shop?

A. Yes.

Q. And I understand when you passed that shop you noticed this train?

A. After I passed it.

Q. As you passed the shoemaker's shop you noticed the train moving westerly?

A. Yes, sir.

Q. And moving slowly?

A. Well, it kind of gathered up speed a little on the crossing.

Q. Now, there was what they call a flat iron car ahead?

A. Yes.

Q. And back of that the engine was pushing the car?

A. Yes.

Q. I understand when you first saw the end of the car, part of it had come on the crossing, about where the wheels are had come on the crossing?

A. Just about.

Q. About how far back,—I think you have told us, but I want to go over it,—about how far back was the shoemaker's shop from the track?

A. Twenty five feet."

Then she is asked:

"Q. Did you have a foot brake and emergency brake on the Ford?

A. Yes, sir."

And she testifies that she was used to driving the car.

"Q. Now, then when you saw this train being pushed over the crossing, you say it was moving west?

A. Yes, sir.

Q. And of course you knew it was moving west, you could see it moving there; that's correct, isn't it?

A. Yes, sure it was pushed west.

Q. Could you see the whole thing when you got a look at it, the car and the engine pushing it there just as you came to the edge of the shoe shop?

A. I seen a little bit of the engine coming there.

Q. And that was a little east of the crossing, was it, and the car was partly on the crossing?

A. Yes.

Q. And about the speed, as you tell us, how fast was it moving westwardly?

A. Which?

Q. The train?

A. Well, it was running slow. I don't know how fast, but it wasn't going so awful fast, but it kind of picked up speed."

Then she was asked:

"Q. Now, then, I understand that the front part of your car came in contact with the side of the car, is that right?

A. Yes."

Plaintiff says that her automobile was swung around against the engine.

The engineer testifies that the train was only going about two miles an hour. This lady says that she saw this car when she was fifty feet away and she says the end of the car was about at the end of where the gate would come down. At that time she could see that far without any trouble, fifty feet back from the track where she had her automobile in the middle of the street, or near the middle, as she testified. She also speaks as though she saw it when she passed the end of the cobbler's shop. She would still be at least twenty-five or thirty feet from the track. She was familiar with all the surroundings. She had lived in Lowellville probably all her life, and she had operated this car for several years. Plaintiff says she never operated it over eleven or twelve miles an hour and that she could stop going at that rate in probably eight or ten feet. She further testifies that she did not turn her car in any direction, went straight down the street, until she struck this train.

There was evidence that the usual signals were given, whistles blown as the train was approaching this street crossing, but she denies that she heard either. Plaintiff admits that she saw this train at the very least twenty five to thirty feet away, and seeing it she made no effort whatever to stop her automobile. As she says herself, she struck this car on the side, just about over the front wheels. There is other tes-

timony that the car was practically over the crossing and she struck the end of the car next to the engine.

We feel that plaintiff's own evidence proves beyond any question that she was guilty of negligence which contributed to her injury. There is no question, probably, raised but what the man who was employed to operate these gates was negligent and that would bring negligence to the defendant, but we feel that notwithstanding defendant's negligence the plaintiff was negligent in the operation of her car. There is no question but what at the time she said she saw this car right on the crossing, at least right approaching the crossing, she could have stopped her car if she had attempted to do so.

The judgment of the court below is affirmed.

ROBERTS and FARR, JJ, concur in the judgment.